# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 18 CR 685 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| SERVANO ZAMORA-MARTINEZ, ) | |
| a/k/a Servando Zamora-Martinez ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Servano Zamora-Martinez ("Zamora") was indicted on November 8, 2018 for allegedly reentering the United States after having been deported and removed, in violation of 8 U.S.C. § 1326(a). Defendant moves to dismiss the indictment, arguing the immigration judge lacked jurisdiction to issue the underlying removal order. In addition, defendant argues the underlying removal order was issued in violation of his right to due process. For the reasons set forth below, the Court denies the motion to dismiss [21].

## I.   BACKGROUND

The parties seem to agree on the facts. Defendant is a citizen of Mexico. He came into the custody of Immigration and Customs Enforcement ("ICE") on December 23, 2009, after an arrest. On the same day, ICE personally served him with a Notice to Appear in front of an immigration judge at 55 East Monroe in Chicago at a "date to be set" and "time to be set."

Defendant's hearing was held July 15, 2015. In the years after defendant received his initial Notice to Appear, defendant was served with four more notices, each indicating a date and time for a hearing. Specifically, defendant was issued a February 23, 2015 notice for a hearing on July 15, 2015 at 1:00 p.m. At the time, defendant was in the custody of the Illinois Department of Corrections. Because defendant was incarcerated, the July 15, 2015 hearing was conducted by televideo, which is how defendant appeared.

At the hearing, the immigration judge denied defendant's requests for waiver and adjustment of status and ordered defendant removed. The order reflects that defendant reserved appeal and that the appeal was due to be filed by August 16, 2015. The parties agree that defendant did not appeal the order of removal. In 2016, after defendant was released from the custody of the Illinois Department of Corrections to the custody of ICE, ICE deported defendant.

## II. DISCUSSION

Pursuant to 8 U.S.C. § 1326(a), it is a crime for "any alien who–(1) has been . . . deported, or removed" from the United States to thereafter "enter[], attempt[] to enter, or [to be] at any time found in, the United States . . ." 8 U.S.C. § 1326(a). Defendant argues that the July 15, 2015 order of removal cannot serve as a basis for the indictment in this case for two reasons. First, defendant argues the immigration judge who entered the order never had jurisdiction in the case, rendering null the July 15, 2015 order of removal. Second, defendant argues that he was denied due process.

Defendant's motion is a collateral attack on the underlying removal order. The statute under which defendant is charged limits collateral attacks. It provides:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> > (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
> >
> > (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> >
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(1)-(3). Defendant has the burden, *United States v. Arita-Campos*, 607 F.3d 487, 490 (7th Cir. 2010), and defendant must establish all three. *United States v. Larios-*

*Buentello*, 807 F.3d 176, 177 (7th Cir. 2015); *see also United States v. Gil-Lopez*, 825 F.3d 819, 822 (7th Cir. 2016); *United States v. Baptist*, 759 F.3d 690, 698 (7th Cir 2014) ("Since [defendant] failed to establish that his removal proceedings were fundamentally unfair, we need not reach 8 U.S.C. § 1326(d)'s other requirements—exhaustion of administrative remedies and the opportunity for judicial review.").

Ordinarily, the Court would consider the threshold issue (whether defendant may challenge the validity of the removal order) before considering the merits of the challenge. Here, though, defendant's argument about why he is allowed to bring a collateral challenge is intertwined with his argument that the immigration judge lacked jurisdiction to order removal. Thus, the Court first considers defendant's argument that the immigration judge lacked jurisdiction to issue the order of removal.

**A.     Jurisdiction of the immigration judge**

Defendant argues that the immigration judge lacked jurisdiction to issue the order of removal. Defendant uses the term jurisdiction to mean non-waivable subject-matter jurisdiction and concludes that the underlying removal order of July 15, 2015 was null and void.

Defendant argues that a federal regulation plus a Supreme Court decision interpreting a statute adds up to a lack of jurisdiction over his removal case. The federal regulation on which defendant relies states, "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). The regulations define "charging document" as including a "Notice to Appear." 8 C.F.R. § 1003.13. Defendant then cites *Pereira v. Sessions*, __ U.S. __, 138 S.Ct. 2105, 2113-14 (2018), where the Supreme Court held that a "putative notice to appear that fails to designate the specific time or place of the noncitizen's removal proceedings is not a 'notice to

3

appear under section 1229(a),' and so does not trigger the stop-time rule." Defendant's logic is flawed, and the Court cannot agree that the immigration judge lacked jurisdiction or that the underlying removal order was void.

To begin with, *Pereira* is inapplicable to this case. In *Pereira*, as in this case, a noncitizen was issued a notice to appear that lacked a specific date and time for his hearing. The noncitizen never received a subsequent notice that included a date and time, because it was sent to the wrong address and was returned as nondeliverable. *Pereira*, 138 S.Ct. at 2112. Pereira was ordered removed in absentia. He had, however been in the United States for more than ten years, and a statute allowed for cancellation of removal when a person had been in the United States continually for more than ten years. *Pereira*, 138 S.Ct. at 2109. The ten-year clock, however, by statute, stops running when "the alien is served a notice to appear under section 1229(a)." *Pereira*, 138 S.Ct. at 2109 (quoting 8 U.S.C. § 1229b(d)(1)). Section 1229(a), in turn, defines a notice to appear as including, among other things, the time and place of the hearing. *Pereira*, 138 S.Ct. at 2109-10 (citing 8 U.S.C. § 1229(a)(1)(G)(i)). Thus, the Supreme Court concluded that a notice to appear could not be a "notice to appear under section 1229(a)" unless it included everything listed in 8 U.S.C. § 1229(a). *Pereira* at 2113-14.

Defendant, however, is not trying to show that the government failed to give him a "notice to appear under section 1229(a)" to engage the stop-time rule. He is trying to establish the government failed to give him notice to appear that establishes the immigration judge's jurisdiction under a regulation (8 C.F.R.§ 1003.13). Defendant fails to recognize that 8 C.F.R. § 1003.13 does not reference 8 U.S.C. § 1229(a) and that, instead, the regulations *themselves* describe what needs to be in a notice to appear. *See* 8 C.F.R. § 1003.15; 8 C.F.R. § 1003.18(b) ("In removal proceedings . . ., the Service shall provide in the Notice to Appear, the time, place

and date of the initial removal hearing, *where practicable*. If that information is not contained in the Notice to Appear, the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing.") (emphasis added).

That is why the Ninth Circuit Court of Appeals has concluded that failure to include time and place in an initial notice to appear does not prevent an immigration court's jurisdiction from vesting. *Karingithi v. Whitaker*, 913 F.3d 1158, 1160 (9th Cir. 2019) ("Karingithi argues that if a notice to appear does not state the time for her initial removal hearing, it is not only defective under § 1229(a), but also does not vest jurisdiction with the IJ. The flaw in this logic is that the regulations, not § 1229(a), define when jurisdiction vests. Section 1229 says nothing about the Immigration Court's jurisdiction."). The Ninth Circuit is not alone in concluding that a failure to include a date and time in a Notice to Appear does not undermine the jurisdiction of an immigration judge to issue an order of removal. *Leonard v. Whitaker*, 746 Fed. Appx. 269, 269 (4th Cir. 2018) ("[Plaintiff] also contends that the agency did not have jurisdiction over his removal proceedings. We conclude that the narrow holding of *Pereira* does not apply in this situation."); *United States v. Perez-Arellano*, 756 Fed.Appx. 291, 294 (4th Cir. 2018) ("Simply put, *Pereira* did not address the question of jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the 2004 removal proceedings."); *United States v. Gaetz-Galvez*, Case No. 18-CR-134, 2019 WL 989766 at *3 (E.D. Wisc. March 1, 2019) (denying motion to dismiss indictment for lack of jurisdiction on underlying removal order) (citing *Karingithi*, 913 F.3d 1158); *see also Cuellar Manzano v. Attorney General of the United States*, __ Fed.Appx. __, 2019 WL 1313401 at *4 (3rd Cir. March 22, 2019) ("[Plaintiff] asserts the IJ lacked jurisdiction based on *Pereira* . . . because the 2017 Notice of Referral to the

Immigration Judge failed to specify the date and time of [plaintiff's] hearing. We decline the invitation to assess the impact of *Pereira*, other than to note the Supreme Court's decision was a 'narrow' one, addressing what information must be contained in a notice to appear in order to trigger the 'stop-time' rule[.] . . . For this reason, we find *Pereira* to be distinguishable[.]"). This Court agrees.

The Court has no reason to think Congress made inclusion of a date and time on a notice to appear jurisdictional. Congress gives agencies their power. *See City of Arlington, Tex. v. FCC*, 569 U.S. 290, 297 (2013) ("A court's power to decide a case is independent of whether its decision is correct, which is why even an erroneous judgment is entitled to res judicata effect. . . . That is not so for agencies charged with administering congressional statutes. Both their power to act and how they are to act is authoritatively prescribed by Congress[.]"). Not every requirement Congress puts into a statute, however, is jurisdictional. The Supreme Court has explained:

> To ward off profligate use of the term "jurisdiction," we have adopted a 'readily administrable bright line' for determining whether to classify a statutory limitation as jurisdictional. We inquire whether Congress has 'clearly state[d]' that the rule is jurisdictional; absent such a clear statement, we have cautioned, 'courts should treat the restriction as nonjurisdictional in character.'

*Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145, 153 (2013) (citations omitted).

Congress gave immigration judges the power to conduct deportation proceedings. 8 U.S.C. § 1229a(a)(1) ("An immigration judge shall conduct proceedings for deciding the admissibility or deportability of an alien."). Congress also gave immigration judges the power to make decisions. 8 U.S.C. § 1229a(c)(1)(A) ("At the conclusion of the proceeding the immigration judge shall decide whether an alien is removable from the United States."). Congress did not, however, as far as this Court can tell, limit immigration judges' jurisdiction to

only those cases in which an alien receives an initial Notice to Appear that includes a date and time of a hearing. Defendant does not point to any statutory provision that clearly states the contents of a Notice to Appear affects the immigration judge's jurisdiction, and this Court does not find one. *See United States v. Monsivais-Lopez*, Case No. 18-CR-218, __ F. Supp.3d __, 2019 WL 361519 at *6 (W.D. Tex. Jan. 29, 2019) ("The statutory provisions governing removal proceedings do not reference jurisdiction. Additionally, nothing in Section 1229 'clearly states' that a notice to appear impacts an immigration judge's underlying authority to conduct removal proceedings. Absent such a clear statement from Congress, the court concludes that a notice to appear is not of jurisdictional consequence.'") (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)); *see also Santos-Santos v. Barr*, 917 F.3d 486, 490 (6th Cir. 2019) ("Alternatively, we find that the [Immigration and Nationality Act] . . . does not address jurisdictional prerequisites."); *United States v. Rivera Lopez*, 355 F. Supp.3d 428, 439 (E.D. Va. 2018) ("The metes and bounds of a federal court's subject-matter jurisdiction are governed by the Constitution's vesting of the federal judicial power and by congressional grants of jurisdiction. By analogy, an agency's subject-matter jurisdiction would stem from congressional grants of authority to act in a particular arena. Yet in this case defendant relies not on congressional limitation, but rather on a regulation promulgated by the agency itself.") (internal citations omitted) (denying motion to dismiss indictment). Furthermore, if the contents of a Notice to Appear were jurisdictional, the Supreme Court in *Pereira* would have dismissed the removal proceedings, rather than remanding them for further action. *See Hernandez-Perez v. Whitaker*, 911 F.3d 305, 314 (6th Cir. 2018) ("If *Pereira*'s holding applied to jurisdiction, there also would not have been jurisdiction in *Pereira* itself. But the Court took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw.").

In any case, defendant received subsequent notices that contained the date and time of the hearing, including a notice on February 23, 2015 that notified defendant of the date and time of the July 15, 2015 hearing. If notice of date and time were jurisdictional, that would suffice. *See Molina-Guillen v. United States Attorney General*, __ Fed. Appx. __, 2019 WL 669715 at *4 (11th Cir. Feb. 19, 2019) (holding that a subsequent notice of hearing which contained the date and time was sufficient to allow the immigration judge to enter an order of removal); *Hernandez-Perez*, 911 F.3d at 315 ("[J]urisdiction vests with the immigration court where, as here, the mandatory information about the time of the hearing, *see* 8 U.S.C. § 1229a, is provided in a Notice of Hearing issued after the NTA.").

## B. Collateral attack

With that in mind, the Court considers whether defendant has demonstrated he may bring a collateral attack on the underlying removal order.

### 1. Exhaustion

The first thing defendant must demonstrate before he may bring a collateral attack on the underlying removal order is that he "exhausted any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1).

Defendant had several available administrative remedies. He could have filed a motion to reconsider. 8 U.S.C. § 1229a(c)(6). He could have appealed to the Board of Immigration Appeals within 30 days after the immigration judge issued the order of removal. 8 C.F.R §§ 1003.3 & 1003.38. He could have filed a motion to reopen. 8 U.S.C. § 1229a(c)(7). "To satisfy the exhaustion prong of § 1326, an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010).

The parties agree that defendant did none of these things. The order of removal reflects that defendant reserved appeal and that the appeal was due August 16, 2015. Defendant did not appeal. Defendant argues he was excused from exhaustion, because the order of removal was void. As the Seventh Circuit has said, "the statute requires exhaustion, not excuses." *United States v. Larios-Buentello*, 807 F.3d 176, 177 (7th Cir. 2015).

As the Court explained above, the Court disagrees with defendant's premise that the immigration judge lacked jurisdiction. In addition, the Court does not agree with defendant that the order of removal was ultra vires. Defendant cites *Mejia Galindo v. Sessions*, 897 F.3d 894 (7th Cir. 2018) for the proposition that the order of removal was ultra vires. That case does not suggest that the order in this case was ultra vires. In *Mejia Galindo*, the Seventh Circuit held that a removal order issued by the *Board of Immigration Appeals* was ultra vires. *Mejia Galindo*, 897 F.3d at 899. The reason the Seventh Circuit reached that conclusion was that Congress, through the Immigration and Nationality Act, gave the power to issue removal orders exclusively to *immigration judges*, not to the Board of Immigration Appeals. *Mejia Galindo*, 897 F.3d at 897 (citing 8 U.S.C. § 1229a(a)(1) & (3)). The Board of Immigration Appeals could not issue an order of removal when Congress had given the power to issue such an order exclusively to immigration judges; thus, the order was ultra vires. The order of removal in this case, though, was not issued by the Board of Immigration Appeals. It was issued by an immigration judge, which is exactly to whom Congress gave the power to issue such an order.

Even were defendant correct that the order of removal was void or ultra vires, that fact would not excuse him from exhausting his administrative remedies. An argument that the immigration judge lacked jurisdiction is among the arguments one can make on appeal, and lack of jurisdiction is among the errors that can be corrected on appeal. *See Karingithi v. Whitaker*,

913 F.3d 1158, 1159 (9th Cir. 2019) (considering appeal of BIA's affirmance of IJ's order of removal on grounds that IJ lacked jurisdiction); *cf. Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000) ("[A] lack of subject-matter jurisdiction is not by itself a basis for deeming a judgment void, that is, open to collateral attack. For ordinarily that is a ground for reversal that can be presented to the appellate court on direct appeal. To allow a ground that can be adequately presented in a direct appeal to be made the basis of a collateral attack would open the door to untimely appeals[.]") (internal citations omitted); *In re: Factor VIII or IX Concentrate Blood Products Lit'n*, 159 F.3d 1016, 1019 (7th Cir. 1998) ("The principal that jurisdictional defects may be noticed at any time is limited, as we have explained, by the equally important principle that litigation must have an end. After a case has become final by exhaustion of all appellate remedies, only an egregious want of jurisdiction will allow the judgment to be undone by someone who, having participated in the case, cannot complain that his rights were infringed without his knowledge. . . . [A] judgment is not to be pronounced void merely because the court that entered it may not have had jurisdiction.").

Defendant did not exhaust his administrative remedies, so he may not challenge the validity of the order of removal.

### 2. Deprivation of judicial review

Defendant seems to be arguing that he was improperly deprived of opportunity for judicial review, because the immigration judge lacked jurisdiction, thereby rendering his removal order void. The Court does not agree that the immigration judge lacked jurisdiction. In any case, the reason defendant had no judicial review is that he chose not to appeal. *Larios-Buentello*, 807 F.3d at 177-178; *United States v. Rangel-Rodriguez*, __ F. Supp.3d __, Case No. 18 CR 581, 2019 WL 556725 at *7 (N.D. Ill. Feb. 12, 2019) ("Just as the defendant in *Larios-*

*Buentello* could have appealed and argued for a change in existing law, so too could [defendant] have moved to reopen his removal case, appealed to the BIA, and eventually gained review by an Article III court.").

Defendant has failed to establish he was improperly deprived of an opportunity for judicial review, so he may not bring a collateral attack on the underlying order.

### 3. Fundamental fairness

Nor can defendant demonstrate "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d)(3). To show fundamental unfairness, a defendant must demonstrate both a violation of due process and prejudice. *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1019 (7th Cir. 2006). Prejudice, in this context, means that judicial review would have granted him relief from deportation. *Arita-Campos*, 607 F.3d at 493.

Defendant argues that he was denied due process because the original Notice to Appear lacked a time and date. The Court disagrees. Plaintiff received notice and an opportunity to be heard. Specifically, plaintiff was given, several months before his hearing, a notice that contained the date and time of his hearing. He appeared at the hearing by video conference, which is allowed by the statute covering removal proceedings. 8 U.S.C. § 1229a(b)(2)(A)(iii) ("The proceeding may take place-- . . . (iii) through video conference[.]"). There is nothing fundamentally unfair about a hearing of which defendant received notice and at which he appeared in a manner approved by statute. As the Seventh Circuit has said, "proceedings which meet the statutory and regulatory standards governing the conduct of removal hearings, as a general rule, comport with due process." *Alimi v. Gonzalez*, 489 F.3d 829, 834 (7th Cir. 2007). Because defendant has not demonstrated that the entry of the order of removal was fundamentally unfair, he cannot bring a collateral attack on the order.

Defendant's motion to dismiss the indictment is denied. This Court joins other courts in this district who have denied motions to dismiss indictments on the grounds that an immigration judge lacked jurisdiction to issue an order of removal. *United States v. Hernandez-Perdemo*, Case No. 18 CR 744, 2019 WL 1399982 (N.D. Ill. March 28, 2019) (Bucklo, J.); *Rangel-Rodriguez*, 2019 WL 556725 (Kennelly, J.); *United States v. Monje-Garcia*, Case No. 18 CR 378, slip opinion [Docket 25] (N.D. Ill. Jan. 15, 2019) (Lefkow, J.); *see also United States v. Manriquez-Alvarado*, Case No. 18 CR 20045, 2019 WL 1292680 (C.D. Ill. March 20, 2019); *United States v. Gaeta-Galvez*, Case No. 18 CR 134, 2019 WL 989766 (E.D. Wisc. March 1, 2019).

### III. CONCLUSION

For the reasons set forth above, the Court denies defendant's motion to dismiss [21].

SO ORDERED. ENTERED: April 15, 2019

_____
JORGE L. ALONSO
United States District Judge